# Collins *versus* Collins.

1. A parol gift of land is not consistent with any subsequent acts of control or ownership by the donor; and if such are proved, the court should give a peremptory instruction to the jury, against the validity of the gift.

2. To constitute a valid gift of real estate, there must be a present intention to give—an actual parting with the right of ownership—certainty of the estate given, and a taking possession in pursuance of the gift. By AGNEW, P. J., approved by Supreme Court.

ERROR to the Court of Common Pleas of *Butler county*.

The defendants in error were plaintiffs below, and brought this ejectment to recover the property willed to them by William Collins, their father, dated 1st December, 1842, and codicil 13th June, 1845, and probated 29th December, 1849. The defendant below, James Collins, took special defence for 71 acres 145 perches, according to survey made by John Smith, 31st January, 1850, a part of which tract, 21 acres and 76 perches, are within the lines of the land devised to defendants in error, by the will of their father, and upon which plaintiffs in error have erected a house and barn, and cleared the most of said land. Plaintiff in error and defendant below, claims the 71 acres and 145 perches, by virtue of a parol gift, made by his father to him, in the year 1832; the evidence of which is as follows:

1st. A survey made by the father in 1832, and the lines well marked upon which the survey of John Smith was located, and the father's declaration to William B. Reed and James Jamison, that he had given it to James. 2d. The assessment of the land to James; to wit, 73 acres, the supposed contents of the survey made by the father, and this assessment commencing in 1832. 3d. The possession taken by James after the gift, and a house

[Collins *v.* Collins.]

and barn erected, and 30 or 40 acres of land cleared thereon, and a continued residence within the lines, for near twenty years, before suit was brought.

There was evidence that the payment of the taxes was required by the old man, and that he exercised some acts of control over the 73 acres, after the alleged gift.

The court, AGNEW, J., charged the jury as follows:—

" The defendant has taken special defence for 71 acres and 145 perches of the tract described in the ejectment, and filed a draft and survey of this parcel. He claims this, part by a parol gift from his father, and possession and improvement made in pursuance of it.

" The questions for the jury are, whether a gift was made by old William Collins, to James, his son, of this parcel, and whether possession, in pursuance of the gift, was taken by James.

" Though these are questions of fact for the jury, yet, what constitutes a valid gift, and what a sufficient possession to give it effect, are questions of law, and the jury must, therefore, decide the case, not upon their own notions of the kind of gift or possession, but upon the instructions of the court as to the legal character of each.

" To constitute a good gift, it must be absolute. There must be a present intention to give, and an actual parting with the right of ownership. It is not sufficient that the object is, that the son should occupy and use the land for his own benefit, take the profits to himself, and make improvements to suit himself. There must be more than this ; there must be an intent to give the title also, and an intent not merely to give it at a future time, or by a future act, but a present intention to give it now. If, then, the act of the father amounts to no more than a division of the land among his sons, a laying of it off to them, to enable them to make a living, and provide for themselves and their families, but at the same time intending to hold the title in his own hands, it is not a legal gift.

" The question for the jury, then, is this : Did William Collins give to James, the ownership or title of this land, as well as the right to possess, use, improve, and enjoy it?

" On this point, the evidence must be clear and satisfactory, leaving the jury in no doubt, but fully convinced. The statute of frauds and perjuries will not suffer loose and casual expressions, declarations made in loose conversations with neighbors, casually occurring,—even the seeming to indicate something like a gift,—to take away from a father his title to his land, and that salutary control a parent should always have over his children.

" The next point, to constitute a good gift, is the certainty of the land or thing given. It is unnecessary to dwell upon this,

[*Collins v. Collins.*]

as the evidence establishes the fact, that the lines are found marked on the ground. There seems to be no doubt that these lines were marked by the old man himself; without a surveyor, it is true, but well marked on the ground.

"But the jury will not forget, that the laying off of the land, and marking the lines, are not in themselves a gift to the son. A father may make a survey, and divide his lands among his sons, and put them into possession, and yet not give them the land. He may intend to set up his children, assist them to live and to support their families, make them comfortable and happy around him, and finally to give each the portion allotted to him, and yet hold the title in himself.

"But if a gift be clearly established, and the certainty of the property manifested, yet these alone will not make a valid gift. There must be more. The possession must be taken by the son in pursuance of the gift. That is, the possession must follow the gift by reason of it, be according to it, and not contrary to it. It must be because of it, and not because of some other arrangement. Therefore, the character of the possession must be consistent with the ownership of the land; such as belongs to title in the son, and not such as is in subjection to title in the father. If the son be in possession as a cropper only, or paying rent in grain, or money, or services, or on condition of paying taxes, or in any manner whatever, showing that the possession only, and not the title, is held of the father, it is not such a possession as will give effect to a gift.

"If, therefore, the testimony of the witnesses on the part of the plaintiff be believed, that the land was only laid off to James to work it, that he paid the taxes as rent for it, that the old man, when he put him on, and often afterwards, told him, as well as his other sons, he would not give the land to him till his death, —that he cut fire-wood on it when and where he pleased, and always controlled it; that James, when the old man got displeased with him, said he would leave the land—the possession of James is not such as will make a good gift, and the plaintiffs would be entitled to recover. Indeed, on part of the defendant, the testimony of some of his own witnesses, goes strongly to corroborate that of the plaintiffs' witnesses, that the act of the old man was nothing more than a laying off of the land, and showing James where to work and improve. But this is for the jury.

"We are asked by the plaintiffs to say, that there is nothing in all the evidence in this case, which could warrant a jury in finding a gift from William Collins to his son James. Although, if sitting as jurors, we would be of this opinion, we cannot take the case from the jury, whose province it is to judge of the credibility of the witnesses and the facts proved by them, and to

[Collins *v.* Collins.]

draw such reasonable presumptions as the facts in proof will warrant. It would be usurping the powers of the jury to do this. But while we leave it to the jury to decide the facts of this case, it is our duty to say, at the same time, that the testi-mony is not such as would, in our opinion, (if sitting as jurors,) convince us, that a gift was made, or that it amounted to any-thing more than the old man's placing his sons upon different portions of his land to work it, and maintain themselves; and his establishing lines, or boundaries, for present convenience, intending to hold the title in his own hands, as a rod of correc-tion, or control, to preserve the property, maintain his own authority, and promote the welfare of his family.

"The admissions or declarations of a party, are the weakest and most fallible of all evidence; liable to be misunderstood, misremembered, misrepresented, mis-stated, and perverted. In a case of this kind, depending, not on any direct evidence of a gift, (that is not proved by any one present at the gift,) but de-pending wholly on admissions and declarations to strangers, or made in casual conversations, a jury should be well satisfied that the conduct of William Collins, during the same time, was con-sistent with these declarations. Conduct at the same time on his part, if consistent with a gift, goes strongly to show he did not mean by such declarations, that a gift had been actually made. His frequent exercise of authority, warning James off, taking firewood from the land, compelling James to pay the taxes of more than the seventy-one acres, and James' acquiescence in these things would tend to show, that no such meaning as a gift, was intended by him, when speaking of James' part of the land, or of what he had laid off, or given to him.

"On the other hand, if he had clearly and certainly parted with his title, and given the land to James, as his own—posses-sion taken, and improvements made by James on the faith of the gift,—he could not afterwards by any act of his own,—any attempt to control the property,—divest the title he had given. When a valid gift is once made, it is beyond the control of the donor, who cannot recall it, or defeat it.

"But in the language of Chief Justice BLACK, (2 Jones, 175,) "When a son goes into possession of his father's land, and makes improvements, a jury is not to infer from that, in the absence of other evidence, that the father gave him the land. Neither are loose declarations of the father to his neighbors, in casual conversations, calling it his son's property, without any explanations how it came to be his, sufficient evidence of a gift."

"Improvements of themselves give the son no title. It is only when they are clearly referrible to a gift, that they have any efficacy.

[Carson et al. *v.* Coulter et al.]

"The facts are for the jury we again repeat, and they will apply to them the principles we have laid down."

The charge of the court was assigned for error.

*Purviance* and *J. M. Sullivan*, for plaintiff in error, cited *Burns* v. *Sutherland*, 7 Barr, 106; *Brattom* v. *Doylestown Bank*, 5 W. & S. 87-100; *United States* v. *Braddee*, Baldwin's opinion; *People* v. *M'Cloud*, 1 Hill, 436; *Pugh* v. *Good*, 3 W. & S. 58.

*Smith* and *C. C. Sullivan*, for defendants in error, cited *Eckert* v. *Eckert*, 3 Pa. R. 332; *Wood* v. *Farmere*, 10 Watts, 195; *Hugus* v. *Walker*, 2 Jones, 173.

The opinion of the court was delivered by

KNOX, J.—This case exhibits an attempt, on the part of a son, to claim more land than his father had devised to him, upon the pretence of a parol gift. As usual, in cases of this kind, the evidence of the alleged gift consists of declarations made by the father to strangers, in the absence of his son, many years before the trial; whilst on the other hand, a state of facts is shown, utterly irreconcilable with the allegation of the plaintiff in error. The court below left the facts to the jury, with a strong intimation, that the bar of the Statute of Frauds and Perjuries was not avoided; and so the jury found.

Under the authority of *Moore* v. *Small*, 7 Harris, 461; *Rankin* v. *Simpson*, Ib. 471, the learned judge of the Common Pleas should have given positive instructions to the jury, that the alleged parol gift was not established. But as these cases were not reported when this cause was tried, they furnished no guide, and the jury was suffered to pass upon the facts.

There was no error committed of which the plaintiff in error can complain.

Judgment affirmed.